All right, next case for argument is 15-3036, Brown v. Defense. Help me with your name. Grahalis. Thank you. Welcome. Thank you. May it please the Court, Andy Grahalis for the petitioner, Damon J. Brown. Before I begin, I'm obliged to direct the Court's attention to a clerical error in the appendix. We cite in our brief page 402, which is a DOD regulation, and that page was inadvertently left out of the appendix. We're happy to file that as a supplemental appendix following this argument. I wanted to point that out to the Court right away. Thank you. Due process, Your Honor, requires more than a rubber stamp. Let me understand here. What you say is that the Bright Bill letter was, in fact, a response, and it should have been considered by DOD as a response to the statement of reason. And you also argue, as I understand it, that the Bright Bill letter had material information in it about the filing of the bankruptcy petition. That's correct, Your Honor. I'm confused because it seems to me that at the time of the Bright Bill letter on March 9th, there hadn't been a bankruptcy petition that was filed because that wasn't done until May 2nd. Am I misunderstanding something here? No. I believe, Your Honor, the timing is there are two bankruptcy petitions that issued this case. The first was in 2005, which Mr. Brown received notice had been discontinued in 2006. That's the bankruptcy that shows up on the credit report and is referred to in the SOR. What I'm referring to is what's being referred to in the Bright Bill letter. The Bright Bill letter says he has a current bankruptcy petition, but that seems to me to be an inaccurate statement given the fact that his new bankruptcy petition wasn't filed until May 2nd. Your Honor, the Bright Bill letter not only contained the statement regarding the bankruptcy, and I'll try to get to address that directly in a moment. It did also contain some additional materials. I understand, but I want you to address the statement that there was a bankruptcy petition because it seems to me there wasn't. Well, no, Your Honor. If you look at page JA-150, it's the discharge of debtor in the Chapter 7 case. That date is March 24th, 2009 on that document. But that's the next year. What I'm talking about is the Bright Bill letter says there's a current bankruptcy petition. You say that's information that DOD should have considered. In fact, it seems to me that that statement is inaccurate. There wasn't a bankruptcy petition until May 2nd. Your Honor, I will try to find that in the appendix. We believe that even if that is the case, the Bright Bill letter did open the door to the information that the agency was looking for, among other things. Even assuming that you were correct, that there was a procedural violation here for not forwarding the Bright Bill letter, there's a question of whether that was harmful error. If the Bright Bill letter was basically based on a false statement or inaccurate statement, then it's hard to see what the harmful error was in not forwarding it. Well, the harmful error is the question that would have gone to the WHS CAF isn't just that a bankruptcy petition had been filed. The question or the mitigating factors that they would have looked at is whether or not the employee is taking steps to alleviate or resolve the concerns. Those steps are reproduced on JA 132. So the mitigating factor that would have been addressed, even if that petition for bankruptcy had not been filed, is that the individual initiated a good faith effort to repay overdue creditors or otherwise resolve debts. In this case, that's exactly what Mr. Brown did. And we understand that there may be – that the Bright Bill letter could have certainly have been clearer. But I think what the evidence shows is that it directly was responsive to the concerns raised in the SOR. It was evidence of the employee of the petitioner trying to resolve and address his debts, which he had already attempted to do earlier in 2005. Since DOD made it clear that any response had to be signed by the employee and that the employee had to notify them of any representation, and this Bright Bill letter was not signed by the employee, why was there an obligation to forward it? And that goes back to our argument that if you look at the testimony of the security specialist, Kohenauer, it's clear in addition to the DOD regulation, it's C8.2.2.1.1, that there was an obligation to assist. And if you look at the record, Lancaster, who's the prior security specialist, his failure to even contact Mr. Brown or to contact Mr. Bright Bill is as unexplained as it is inexplicable. He certainly knew as the security specialist that the Bright Bill letter was responsive. He knew that Mr. Brown intended to respond to the SOR, and there's no explanation for why, having had the Bright Bill letter for weeks, he failed to even inquire as to, is this what you intend as your response to the SOR? My understanding is that he had an obligation once he received the Bright Bill letter, not necessarily to forward the Bright Bill letter, but to call the employee and say, we can't consider this as a response because you didn't sign it. I had a minimum to do that. And it's really inexplicable why he did not. They didn't call him to testify. He had left the agency. And you have the new security specialist, Mr. Kohenauer, who says he certainly would have done that. And in the breach, he would have forwarded that information even if he didn't think it was a response to the SOR because he conceded that that was not his decision to make. And had he forwarded it to the WHS CAT, even if they had not considered it a response to the SOR, it still would have preserved Mr. Brown's ability to appeal the letter of denial that he received internally. I understand your argument that they had a duty to assist to the extent that they should have called Mr. Brown and told him, we've got this letter, do you know anything about it? It's harder for me to accept the proposition that if I'm in a proceeding and some random person submits a letter purporting to be on my behalf, that the correct way to do it was that they should have forwarded that on. That could be extremely detrimental to employees if people in the organization are forwarding on material that the employee hasn't signed or even know about, right? So I'm in a little trouble with your suggesting in certain respects it might not be helpful to the employee. It might be detrimental, and the employee ought to at least have the right to see it. So I'm a little troubled by your suggestion that there was an obligation on the agency to just forward the letter on. That may be possible, but that is not the case here. Mr. Brown had indicated that he intended to respond to the SOR. If, in your hypothetical, someone had indicated they didn't, that's possible. Did he say my accountant, Mr. Bright, whatever this person's name is, is going to respond on my behalf? It's pretty risky to have people submitting things without your signature purportedly to be on your behalf. The agency wouldn't know if he'd even seen it or approved it. So what did he say was coming, that he was responding? He said he was going to respond, but if you look at the Brightman letter, it's very clear. Under the circumstances here, the agency not only had a duty to assist. They should have known that that's what – at least that this was an attempt to satisfy that requirement. Well, the caption of the letter is helpful in that regard. Absolutely, Your Honor. The entire letter, if you read it, is not a random person. It's on the attorney's letterhead. It provides his address, his phone number. It invites, feel free to contact me if you have any questions. Certainly, if there was a question, they could have called him and said, who are you? If that were the case, who are you? We don't ordinarily forward this information to the WHSCAT. They easily could have called Mr. Brown, who was there in the facility. This would have been a five-minute conversation that would have given him the opportunity to perfect the response to the Statement of Reasons. It would have preserved his appeal rights, and it would have put the fact that ultimately his debts are discharged. Ultimately, he does address and takes very responsible steps to address the agency's concerns. Are you also contending that regardless of the Brightville letter and whether that should have been a red flag, that the POC would have at least had an obligation to, given that he already knew that Mr. Brown wanted to respond, that he had an obligation to explain to Mr. Brown how to seek an extension of time before the deadline expired? Certainly. That's certainly the case. You see it from the testimony of Mr. Kohenauer. You see it in their regulation that we cannot deny, and I know the government points this out, Mr. Brown signed the Statement of Reasons. He signed the paperwork, and we've never disputed what that paperwork said. But in context, on the facts here, Mr. Lancaster had a duty, the agency had a duty, to at a minimum inquire, and that would have made a huge difference both in the resolution of Mr. Brown's eligibility and his procedural rights with respect to the WHS staff. Can I just ask you, as things went down when he was called not before but after the deadline passed, right? Correct. Okay, so I guess you have a problem with that. But he never, and it was suggested to him that he submit it late and ask for it. But in the ultimate, in the tardy reply filed by Mr. Brown, he never referenced the Brightfield letter, right? He, well, Your Honor, I have to find the case. CA 142. And 143, and I don't see any reference. I mean, if we're here now. It's not in this document, Your Honor. Mr. Brown did have a conversation. Well, that may have changed the complexion of what went down here. I mean, if he filed late and he said, this letter was sent. This represents my position. I wish it had been considered and therefore it ought to be considered in time and weight. There's no look back to the Brightfield letter when he ultimately does respond. I don't believe that's the case at all, Your Honor, because Mr. Brown had a conversation with Mr. Lancaster. And in that conversation, which he testifies about, I do believe there was a statement or there was discussion of. I think there was a mistake here. I'll include a response. And that's repeated in Mr. Brown's ultimate reply to the notice of proposed removal. So what is your position, that they ought to have considered the Brightfield letter or that they ought to consider the information he provided late? The procedural error that we believe Mr. Brown was harmed by is the agency's failure to inquire after receiving the Brightfield letter and its failure to forward the Brightfield letter to the WHS CAF because those errors, which simply don't make sense in context, given that they knew it was coming. When did he complain about that? Why didn't he raise that? Shouldn't he have necessarily raised that when he provided his late submission to ask them to consider it? He doesn't reference the letter. So even if they had accepted this as timely, it wouldn't necessarily cover the Brightfield letter, right? But that still wouldn't cure the procedural error. And looking at it after the fact, parsing down whether or not he could have submitted a later response after he had been past the deadline and not notified that the Brightfield letter was not forwarded or deemed insufficient by Mr. Lancaster, which we have to presume, looking back at it, wouldn't have changed it. What he did try to put forward at that time was a response to the allegations. But did he ever – I'm sorry. I was just going to ask, what is the attachment to the Brightfield letter? Because I am not going to find that in the appendix. Your Honor, I don't know that that was in the record. I believe, and I'll look at the testimony, that that was evidence of the bankruptcy petition. But I don't have that 100%. I'll check that in the record. And if I can reserve some time for rebuttal, see if I can locate it. Please, when you get up on rebuttal, address my question as to whether this statement about the filing of the petition in the Brightfield letter, which seems to be the heart of the Brightfield letter, was accurate or inaccurate given that it appears that the petition wasn't filed until May. Yes, sir. If I can reserve what time I have. Yes. Thank you. Mr. Smith, please, the court. Mr. Brown was provided with very explicit instructions about how to respond to the statement of reasons. The letter of instructions was two pages, and in three separate paragraphs on those two pages, he was told that his response had to be from him personally. It had to be signed personally by him. What about the duty to assist here? What about the duty to assist? Why didn't somebody call him and say, this thing, this Brightfield letter doesn't count. If you want to submit something, you've got to sign it. The duty, there is no duty to assist in the regulation. The regulation requires that he be informed of the right to respond, of the right to request an extension, that he be instructed as to how to respond, and those instructions did tell him that he had to respond in something that was signed personally by him and dated, and he didn't follow those instructions. That's the duty, and then the duty is to pass on an actual response. Mr. Koehner emphatically specified this was not a response, and it wasn't. It wasn't signed and dated by Mr. Brown in accordance with the instructions, and he admitted. What's bothering me about this case, as I understand there are rules and the rules were clear, is that if they had, when we personally mess something up or send something to the wrong address or don't sign it, typically what happens is it's rolled over. You get it back telling you this is improper. We can't accept it because you didn't, it doesn't comply with this, and normally that gives you sufficient time to fix your mistake and proceed. So except for the duty to assist, I don't really know how broad or narrow that is, but it seems to me the normal practices, if someone submits something and it's inadequate, you should do something with it, like send it back for him so that there can be something cured. Well, Mr. Bancaster didn't testify, but the time had not run out, so he was waiting. He was waiting for Mr. Brown to provide a complete response. But then he did wait for the time to run out. I mean, there was plenty of time between when he got that and when he, after the deadline, went back to Mr. Brown and said, oh, by the way, this isn't enough. He didn't say this is not enough. He said your deadline's over. That's what he told him. And then Mr. Brown said, well, what? Judge Proh's point well taken in that he had plenty of time to say this isn't enough. That was not his obligation because his obligation was not to go back and say this is not enough. His obligation was to take a response, if one came in that met the requirements, and forward it. When none came in, he simply said to Mr. Brown, nothing came in that constitutes a response, and now your time is up. So why does he have an obligation to say we got this letter, and that can't be considered to be a response? So you should know that we're not going to consider it. His obligation is just to make sure that Mr. Brown understands the instructions and forwards something that does constitute a response, not to judge it, not to respond to him, but to take anything that he provides. And he was waiting. That could have been part of a response. It was something that came in, and it had been supplemented by a signed writing. So the reason why they're filing this court and they're procedurally deficient, we should just remain silent until the time runs and then throw out the case? Well, in this case, Mr. Lancaster is not a court. He is an individual who is designated to receive everything. What I'm saying is that's what courts do, particularly when they get things from individuals that don't comply with the rules. We say, you know, this doesn't comply with the rules. We can't accept it. Fix it. Yes, if something can't be filed because it doesn't comply with the rules, then, yes, it has to be rejected. It's not that this had to be rejected. But we tell people that it's rejected so they can fix it. But what I'm trying to say is the distinction is that this is not rejected. This was something that Mr. Lancaster could hold onto, and had Mr. Brown followed it up with the written representation that Mr. Brightly was in fact his attorney and something signed by him, then that all could have gone forward. It wasn't that it was rejected to send back to him. It was just he was waiting for more information to come in. Neither Mr. Brown nor Mr. Brightly knew that it was not accepted. Why would they have done it? I mean, I understand the logic of what you're saying, but it requires Mr. Lancaster picking up the phone and calling Mr. Brown and saying you should submit something because we've got this filing and we can't accept it unless it's got your name. Let me ask you one further question. It's my understanding, but I don't have the site from the record, that even after the deadline passed and Mr. Lancaster finally did call Mr. Brown, didn't he suggest that Mr. Brown submit a response and apologize for his tardiness and move forward with it? So he obviously thought that even a tardy response if Mr. Brown explained the circumstances would be accepted, right? What he thought we can't know, Mr. Lancaster didn't testify. Well, he obviously wasn't just jerking him around and telling him to file something for the sake of filing it, so he obviously had some expectation that even a late filing under these circumstances might well be considered, right? Again, I can't say that that was his expectation. It may have been a hope. It may have been just a Hail Mary suggestion. It's late, but you know what? Maybe if you explain that it's late, it can't hurt. So Mr. Brown said, I admit, this is late. He didn't refer to the bribery letter. He didn't say I tried to respond timely. He said, this is late. I was trying to gather information. I hope you can explain this. Well, what's the procedure? Are there regulations that deal with accepting late filings? Is there a history of their having accepted late filings as a sufficient excuse? We've got that in the record, Your Honor. And the initial letter explains that if a response isn't received within the time period, including any extensions, and Mr. Brown had sought one extension, and he had been granted one extension. However, he never sought another extension. Even though his letter, his tardy letter says, I'm late because I was looking for more information, he never sought another extension to get that information together. There's nothing in the record that suggests that a late response is acceptable or that there's provision. There's provision for extensions, but not for a late response. Well, the first extension was so that he could get the bankruptcy filing ducks in a row. At that point, he didn't seek a second extension because he thought he already had them in a row and had told Mr. Lancaster about that. Well, that's not what his May 5th letter says. His May 5th letter says, I'm really sorry. I didn't get this in in time because I was still gathering information. And that's his own admission that he submitted late. I guess, you know, I don't understand. I mean, this has got to be just about the most sympathetic employee in all the circumstances that led to these debts and his efforts to try to clean them up. Why is it, what would be, what would have been the prejudice to the agency from allowing a technical reply to go forward and saying the agency supports this? Okay, and let me give you three responses to that. First of all, in terms of a response to the statement of reasons, it really wasn't one. Even the right bill letter wasn't. Yes, it addressed his effort to clean up by referring to a bankruptcy, and I'm not sure the bankruptcy wasn't filed until May 2nd because I haven't been able to find anything in the record that suggests it was before then. But to the extent that it refers to a current bankruptcy petition, it referred to some effort to resolve the debt. It did not address the issues that led him to incur the debt in the first place, which the statement of reasons. Wait a second. Why isn't that significant? It is significant because the statement of reasons explicitly identified the fact that he incurred debt in the first place. Yes, that was part of the reason, but the rest of it was that he hadn't done anything to fix it, and the filing of a bankruptcy petition is something to fix it. So it's very pertinent, isn't it? It addresses that aspect. It does not address at all the aspect that reflects on his reliability and trustworthiness and character in incurring the debt in the first place. Don't you have to admit that it's material to the decision that was rendered that if he had, in fact, filed a bankruptcy petition, he was taking steps to take care of it, which they weren't aware of? That I would have to admit, Your Honor. However, and then I want to continue and answer the rest of this question, even if this court, because I want to make sure I get to this, even if this court were to disagree with both the administrative judge and the full board that this was error, Mr. Brown has utterly failed to demonstrate that it was harmful error. Well, that's what we're just talking about. It's harmful error because it's directly addressing part of their reasons for saying that he didn't satisfy those security requirements. But to show harm, Mr. Brown has to demonstrate that the agency would have reached a different decision on the adverse action, which was the removal action. In order for them to have likely reached a different result on that, the agency, the adjudicating facility, would likely have had to come to a different decision on the denial of his eligibility. That gets into the merits of the actual eligibility determination, which neither the board or this court can look to. So, Mr. Brown... So, in other words, nobody has the ability to ever make harmless error determination because it's beyond our jurisdiction? I would disagree with that, respectfully, Your Honor. So that means that any procedural violation can never be redressed because we are without jurisdiction to determine whether it was harmful error? I would respectfully disagree with that, Your Honor. In, for example, the Romero case, the error that was asserted, although it ultimately was not found to have been committed, the error that was asserted was that the adjudicating body that made the security determination lacked authority. Now, had that error been actually found to exist, it would have rendered that security clearance just simply a null and void and it wouldn't have involved the board or this court into the actual merits. So that would be an instance where an allegation of harmful error could be sustained. Why isn't it involved in the merits? I mean, let's assume hypothetically that the board said, because of all of these debts and because he hasn't filed for bankruptcy and we see nothing in the record to indicate that he's tried to overcome these financial difficulties, we are denying him the clearance. Wouldn't we have jurisdiction to look at that letter and say, if there was error, it was harmful error? No, Your Honor. We don't have jurisdiction on that either? The court doesn't have jurisdiction to look at the merits of what the adjudicating facility, because we would need the adjudicating facility to change their adjudication for the agency to have likely not removed him. As long as that eligibility was denied, that removal was not going to change. And we think that reason was error. That would require this court to predict what the adjudicating body would have done on the merits of his security or eligibility. Wait a minute. Maybe you didn't understand my question because I don't know. If the adjudicating body had a decision that said we are affirming or we're denying his clearance because of the following, and we conclude that there was error in that, well, you say we can't review what they've said. We're not second-guessing their decision, but we're relying on, if they relied on X and we've concluded there was an error with regard to that, you're saying we can't? So I really want to make sure I understand the question. Okay. So you're hypothetical, which is not the case. Well, let's assume the adjudicating authority says, we are denying this because he never filed anything. He didn't even try to file anything late. And we conclude, based on the record, that that was wrong, and, in fact, he did try to file something late. And we know that was the reason for their decision. And the adjudicating facility actually changes their adjudication so that they don't deny him eligibility? No, of course not. That's the only basis on which the court – Wouldn't the harm be in not letting the adjudicating facility to at least consider the actual facts? The court can't look at that. The court can look at whether the agency – I'm not saying they look at whether they have to consider it. I'm saying the harm is just not giving them the opportunity to look at it. No, the harm has to go to whether the agency likely would have reached a different result on the removal action itself. And that would only have happened if we had a different decision on the eligibility. Which could have happened if the appeal had been – But could is not likely to, and for the court to inquire into whether it likely would involve the court into the merits of that eligibility determination. Well, couldn't we at least send it back to have them consider the question of whether they would have reached a different decision if they had the right information? But the court can't send it back to the adjudicating facility because the adjudicating facility is not before this court. It's only the agency's decision. We could send it back to the board to have them send it back to the agency or ask the board to have testimony from the agency representative as to what they would have done. But the agency – even the board can't get involved in the adjudication aspect of the security clearance adjudication. They can't get involved in the merits of that or what the agency adjudication would have done or wouldn't have done. They couldn't even ask the agency what it would have done. I don't believe so, Your Honor. I believe that that would involve the board in the actual merits determinations by the adjudicating facility. I thought the answer would be simpler than that, which is that we have to establish that there was harmful – I thought I understood your position to be we have to establish here that there was harmful procedural error. So we have to be able to answer the question here as to whether it would have been changed in the outcome. Is that not your position? Yes, that is what I am saying, Your Honor. Okay. If there are no further questions. Thank you. Thank you. How do you articulate the harmful error? The harmful error is, again – first of all, likely is not certainly, no more than it may be. Likely is based on the evidence that's in front of this court, whether it's likely it would have affected the outcome. Is that the standard, likely? Likely. And looking at what we have here, looking at the agency's own regulations – I thought the standard was likely that it would have led to a different outcome. Yes, Your Honor. Forgive me for misspeaking. But I still believe that – first of all, Romero is still good law. It is on all fours with what we're arguing here. And this court does have jurisdiction to consider whether the agency followed its own procedures. That concession was made in Egan, and it's repeated and outlined in Romero, and that is still the law, and that is still exactly what we are asking this court to do. We are not asking this court to engage in a second guessing of whatever – No, but you're conflating the two issues. And as I understand it, they're separate issues. Even if we find that the agency didn't comply with its own rules or whatever we find, we still have to establish that there was harmful procedural error in terms of the error that was committed by the agency. Correct, and we believe that that's on this record shown that that is likely exactly what happened if you look at, for one thing, the loss of his appeal rights. That's a very persuasive, we believe, factor that shows that it likely would have led to a different result. Right, so that's the question I was asking. So your allegation of harmful error is that the loss of his appeal rights, because had he had the right to appeal, then it's likely that there would have been a different determination. Correct. Under the agency's own criteria, under the regulations and policies that they have produced. And I'd like to – So the different result is that the issue had been considered on the merits rather than his appeal dismissed for failure to respond. Yes, Your Honor. But don't we have to look at whether or not, therefore, if he had the right to appeal, he would be likely to prevail on appeal? Clearly he was denied the right to appeal. The question is whether or not it's likely that he would prevail on appeal. That goes back to one of our other arguments, which is we shouldn't forget that Egan and Conyers are narrow exceptions. No, but can you answer my question? It's true, right, that your argument would have to be that he would be likely to prevail if he had had the right to file an appeal. We certainly believe he would have been likely to prevail. That's correct. And that's looking, again, at the agency's own criteria that they have produced. Well, what say you to Ms. Stern's argument that this is all outside of our jurisdiction? Not at all because, again, as Judge Dyke pointed out, the remedy here would be a remand back to the agency. The decision, the final decision, would go back to the agency because this is a procedural error. It's not a merits error. It's not a merits analysis. It's a procedural error that goes back to the agency for the agency's consideration. Can you answer before your time runs out Judge Dyke's very first question? Yes, and I wanted to get to that. I have a partial answer. I'm forced to confess. I don't have in the appendix or in the record the specific date of the second filing of bankruptcy. However, with respect to what was attached to Mr. Brightbill's March letter on JA 148, Mr. Brown explains in his reply that it was another letter, another copy of his creditors which were listed on his bankruptcy petition. And so it was responsive to the agency's criteria. He was attempting to address the concerns that the agency raised in the SOR. Just because I see I have very little time left with respect to the due process argument. Again, Conyers and Northover and Egan, whether Conyers was an expansion or whether it was a clarification, the heart of those cases now as they are the law is that it is the merits or the substance of the agency's security determination which a non-expert third party is not equipped or does not have jurisdiction to consider. But requiring the agency to simply have a deciding official with the authority to make that determination does not look to what the agency's actual merits or substantive analysis is and it is also consistent with the agency's own policy which says in each case must be judged, and I'm at 407 in the appendix, on its own merits and final determination remains the responsibility of the specific department or agency. In this case, that was DFAS. And so requiring a deciding official who could have in fact changed the outcome does not offend Egan and it is entirely what the Fifth Amendment requires. And for these reasons, we ask that you reverse the rule. Thank you. We thank both parties and the case is submitted. That concludes our proceedings. All rise.